**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PRESIDIO, INC., PRESIDIO HOLDINGS,    )
INC., and PRESIDIO NETWORKED          )
SOLUTIONS LLC,                        )
                                      )
           Plaintiffs,                )
                                      )
    v.                                )    C.A. No. 20-965-LPS
                                      )
GREGORY SEMLER, CANDACE DAVIS, and    )    **FILED UNDER SEAL**
RIGHT! SYSTEMS, INC.,                 )
                                      )
           Defendants.                )

<u>**REPORT AND RECOMMENDATION**</u>

Presently pending before the Court is a partial motion to dismiss filed by Defendants

Gregory Semler ("Semler"), Candace Davis ("Davis"), and Right! Systems, Inc. ("RSI")

(collectively, "Defendants"). (D.I. 5.) As announced at the hearing on September 10, 2020, I

recommend that the motion be GRANTED-IN-PART and DENIED-IN-PART. My Report and

Recommendation was announced from the bench at the conclusion of the hearing as follows:

> This is my Report and Recommendation on Defendants'
> motion to dismiss pursuant to Federal Rules of Civil Procedure
> 12(b)(2) and 12(b)(6). (D.I. 5.) I will not be issuing a separate
> written report, but I will issue a Report and Recommendation that
> incorporates by reference my oral rulings today. I want to
> emphasize before I get into the rulings that while I'm not issuing a
> written opinion, we have followed a full process for making the
> decisions that I'm about to state. I have reviewed the complaint and
> attached exhibits, the parties' briefing on the motion to dismiss and
> accompanying declarations and exhibits, and we heard lengthy
> argument today. All of the submissions and the arguments have
> been carefully considered.
>
> For the reasons I will discuss, I recommend that Defendants'
> motion be granted-in-part and denied-in-part.
>
> Plaintiffs Presidio, Inc. and Presidio Holdings Inc. are
> Delaware corporations with corporate headquarters in New York

City. Plaintiff Presidio Networked Solutions LLC is a wholly-owned subsidiary of Presidio Holdings Inc. Presidio Networked Solutions is a Florida LLC with corporate headquarters in New York City. I'll refer to the three plaintiffs as Presidio.

Presidio originally filed this action in the Court of Chancery on June 30, 2020. (D.I. 1; *Presidio, Inc. v. Semler*, C.A. No. 2020-0536-MTZ (Del. Ch.).) Presidio's verified complaint names three defendants: Gregory Semler, Candace Davis, and Right! Systems, Inc. RSI is a Washington Corporation with corporate headquarters in Lacey, Washington. Defendants removed the action to this Court on July 20, 2020. (D.I. 1.)

I will now summarize the facts alleged in the verified complaint. For purposes of analyzing the complaint under Rule 12(b)(6), I assume these facts are true.

Presidio provides "professional and managed services for advanced information technology solutions, including designing and implementing networking and cloud computing solutions, data storage services and data centers, and information and cyber security services." (D.I. 17 ("Compl.") ¶ 16.) Presidio serves customers in a wide variety of industries, including state and local government and education or "SLED." (*Id.* ¶¶ 16, 18.) Presidio contracts with suppliers and strategic partners that provide hardware and other components for the products that Presidio provides to its customers. (*Id.* ¶ 17.)

Defendants Semler and Davis were both employees of Presidio. Semler was a Vice President of Sales for Presidio from February 2014 through January 2020. (*Id.* ¶¶ 9, 18-19.) In connection with his employment, Semler signed a "Non-Competition, Non-Solicitation and No-Hire Agreement," dated February 26, 2014 ("Semler Agreement"). (*Id.* ¶ 12, Ex. A.) Among other things, the Semler Agreement prohibits him from competing with Presidio or soliciting Presidio's employees, customers, or suppliers for 18 months after Semler ceases to be an employee. (*Id.*, Ex. A §§ 4, 5.)

Davis was a Senior Account Manager for Presidio from January 2015 through June 2019. (*Id.* ¶ 10.) Davis was "responsible for soliciting, servicing, and maintaining certain . . . customer accounts, primarily SLED customer accounts, in the Pacific Northwest and mountain state regions." (*Id.* ¶ 20.) "Davis was the Senior Account Manager assigned to Presidio's accounts with State of Washington Department of Corrections ('DOC'), Department of

2

Revenue ('DOR'), and Department of Ecology ('DOE') and the Washington Healthcare Authority ('HCA')." (*Id.*) Davis was also responsible for managing the relationships with Presidio's "partner suppliers who partner with Presidio to design and implement customized networking and data solutions for Presidio's customers." (*Id.* ¶ 21.)

Davis signed a "Confidentiality, Invention Assignment, Non-Solicitation and No-Hire Agreement" in connection with her employment ("Davis Agreement"). (*Id.* ¶ 13, Ex. B.) Among other things, the Davis Agreement prohibits Davis from soliciting any employee, customer, or supplier of Presidio during the "Restricted Period," which is defined as ending on the date 12 months after Davis ceases to be employed by Presidio. (*Id.*, Ex. B §§ 1(d),(e), 4.)

The Davis Agreement also requires Davis "at all times during the term of employment and thereafter to hold in strictest confidence, and not to use, except for the benefit of [Presidio] to fulfill [Davis]'s employment obligations, or to disclose to any Person without written authorization of [Presidio], any Confidential Information" of Presidio. (*Id.*, Ex. B § 2(a).) "Confidential Information" means "any [Presidio] proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and confidential information regarding customers (including, but not limited to, customers of [Presidio] of whom [Davis] has called or with whom [Davis] became acquainted during [Davis]'s term of employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to [Davis] by [Presidio] either directly or indirectly in writing, orally or by drawings or observation of parts or equipment." (*Id.*, Ex. B § 2(a).)

"[B]oth Semler and Davis were privy to competitive and confidential information concerning Presidio's customers (including the SLED accounts they managed)," including "pricing, margins, and customer requirements and strategies." (*Id.* ¶ 23.)

RSI is one of Presidio's direct competitors and frequently bids on the same customer contracts as Presidio. (*Id.* ¶ 32.) In 2019, RSI and Presidio engaged in negotiations for a potential acquisition of RSI by Presidio. (*Id.* ¶ 33). In connection with the potential transaction, the parties executed a confidential disclosure agreement ("RSI Agreement"). (*Id.*, Ex. C.) The preamble states that it "is effective as of May 6th, 2019 between Right! Systems, Inc., a

Washington corporation, with offices located at 2600 Willamette Dr. NE, Suite C, Lacey, Washington 98516, and Presidio, Inc., a Delaware corporation with offices located at One Penn Plaza, Suite 2832, New York, New York, 10119." (*Id.*, Ex. C.)

The RSI Agreement contemplates the exchange of information, called "Evaluation Material," during the parties' discussions and sets forth obligations concerning that information. Specifically, Paragraph 1 states, "Each party will use the Evaluation Material received from the other party solely for the purpose of evaluating the Potential Transaction and such information will be kept confidential by the Recipient . . . ." (*Id.*, Ex. C ¶ 1.) Paragraph 14 of the RSI Agreement provides, "This Agreement shall be governed by the internal laws of the State of New York, without reference to the conflicts of law principles thereof, provided that venue for any action to enforce or interpret the terms of this Agreement shall be in the county of the State of the party to commence such action." (*Id.*, Ex. C ¶ 14.)

In Fall 2019, Presidio decided not to go forward with the acquisition of RSI. Shortly thereafter, RSI began to recruit Semler to help RSI grow its business. (*Id.* ¶ 34.) Semler resigned from Presidio on January 6, 2020 and was hired by RSI later that month. (*Id.* ¶ 37.)

Semler and RSI also solicited and recruited Presidio's director of sales, Timothy Ellis, who joined RSI in March 2020 as its Chief Information Security Officer. (*Id.* ¶ 39.) Semler and RSI also recruited Davis, who had previously left Presidio on June 21, 2019. (*Id.* ¶ 35, 40.) Davis was hired by RSI in April or May 2020 as an account manager. (*Id.* ¶ 40.)

Presidio alleges that, since their hire, Semler and Davis have solicited certain of Presidio's customers. It further alleges that Defendants are engaged in a "coordinated campaign . . . to unfairly steal Presidio's customers and suppliers" through the use of Presidio's confidential information. (*Id.* ¶ 2.) The coordinated campaign allegedly includes the following:

1. With respect to the Presidio/RSI negotiations in 2019, "Semler was actively involved in the negotiations on behalf of Presidio and identified the Presidio customers and suppliers which he managed and at which he had key contacts in connection with the potential benefits of the acquisition." (*Id.* ¶ 34.) Shortly after Presidio decided not to go forward with the acquisition of RSI, "based upon the acquisition discussions and Semler's involvement,

4

RSI began recruiting Semler to help them grow their business, utilizing his key contacts at Presidio's State of Washington SLED customer accounts and the suppliers who worked with Presidio on those accounts, with the goal of taking business from Presidio." (*Id.* ¶ 34; *see also id.* ¶ 51.)

2. Semler and Davis have, at the direction of RSI, directly contacted certain of Presidio's customers, including the State of Washington DOR, DOC, DOE, and HCA, all of which Semler and Davis serviced and managed on behalf of Presidio. (*Id.* ¶ 41.)

3. "Semler and Davis have used and are using a business model developed by using Presidio's confidential information, specifically pricing information, margin information, and customer requirements." (*Id.* ¶ 41.) For example, Semler and Davis are using their knowledge of Presidio's confidential pricing information along with Presidio's business strategies regarding how Presidio allocates margins and pricing decisions to propose pricing lower than what Presidio currently provides or than what Presidio would be able to provide in order to capture customer accounts for RSI. (*Id.* ¶ 42.) Semler and Davis are also using their knowledge of Presidio's customers' requirements and Presidio's refresh or renewal cycles to help RSI determine which suppliers RSI can or cannot use to craft and propose alternative solutions to Presidio's customers. (*Id.* ¶ 43.)

4. Semler and Davis are also soliciting Presidio's suppliers and strategic partners. They are using Presidio's pricing and margin information, as well as Presidio's information about customer preferences, in approaching Presidio's suppliers. (*Id.* ¶ 44.)

5. RSI and Semler have recruited Presidio employees who have knowledge of Presidio's confidential information in order to Solicit Presidio's customers. (*Id.* ¶¶ 51-52.)

That concludes my summary of the factual allegations.

Presidio's Complaint alleges the following five counts against Defendants: Count I alleges breach of contract (the Semler Agreement) against Semler; Count II alleges breach of contract (the Davis Agreement) against Davis; Count III alleges breach of contract (the RSI Agreement) against RSI; Count IV alleges tortious interference with contract against RSI; and Count V alleges unfair competition against all three defendants.

On July 28, 2002, Defendants filed the pending partial motion to dismiss. (D.I. 5.) Defendant RSI moves to dismiss all

counts against it (Counts III, IV, and V) under Rule 12(b)(2) for lack of personal jurisdiction and to dismiss Count V for failure to state a claim.

Defendant Semler moves to dismiss Count V under Rule 12(b)(6) for failure to state a claim.  (D.I. 5.)  Semler answered Count I and denied the allegations.

Defendant Davis moves to dismiss both counts against her (Counts II and V) under Rule 12(b)(6).

My analysis is as follows.

**[1.    RSI's motion to dismiss Counts III, IV, and V for lack of personal jurisdiction]**

I will start with RSI's motion to dismiss for lack of personal jurisdiction.  I am also not going to read into the record the legal standard that applies to a motion to dismiss for lack of personal jurisdiction.  I have a standard that I used in an opinion at 2019 WL 6828984, and I incorporate that discussion by reference.[1]

That opinion also summarizes the law governing general and specific jurisdiction, and the fact that a defendant can consent to the jurisdiction of the court, for example, in a forum selection clause of a contract.  I also incorporate that discussion by reference.[2]

---

[1] *See Truinject Corp. v. Nestle Skin Health, S.A.*, No. CV 19-592-LPS-JLH, 2019 WL 6828984, at *7 (D. Del. Dec. 13, 2019).  A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Although Rule 8 does not require a plaintiff to set forth in the complaint "the grounds upon which the court has personal jurisdiction over the defendant," *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995), "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  But if the district court does not hold an evidentiary hearing, the court should resolve any factual disputes in the plaintiff's favor and should deny the motion if the plaintiff's evidence establishes "a prima facie case of personal jurisdiction." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

[2] *See Truinject Corp.*, 2019 WL 6828984, at *8.  To exercise personal jurisdiction over a defendant, a court generally must answer two questions: one statutory and one constitutional.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015), *aff'd,* 817 F.3d 755 (Fed. Cir. 2016).  The statutory inquiry requires the court to determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located.  *IMO Indus.*, 155 F.3d at 259.

In this case, Presidio does not argue that the court has general jurisdiction over RSI, and the record suggests that it does not. Rather, Presidio argues that the court may exercise specific jurisdiction over RSI based on RSI's consent to the Court's jurisdiction in the RSI Agreement. I agree with Presidio that the Court can exercise jurisdiction over RSI, but only with respect to Presidio's claim that RSI breached the RSI Agreement.

---

The constitutional inquiry asks whether exercising jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution. *Id.* Due Process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). A court has general jurisdiction over a corporate defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). If the court has general jurisdiction over a corporate defendant, it may hear any claim against it, even if the claim arose outside the state. *Goodyear*, 564 U.S. at 919; *Provident Nat. Bank*, 819 F.2d at 437. A court has specific jurisdiction over a defendant in a particular suit "when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, (1984)); *see also Remick*, 238 F.3d at 255.

But the requirement that a court have personal jurisdiction is a "waivable right," and a defendant may consent to the jurisdiction of the court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). A defendant is deemed to have consented to personal jurisdiction in a particular jurisdiction when the parties have stipulated in advance that their controversies should be resolved in that jurisdiction, such as in a forum selection clause of a contract. *See Burger King*, 471 U.S. at 472 n.14 (1985); *see also Hardwire, LLC v. Zero Int'l*, Inc., No. CV 14-54-LPS-CJB, 2014 WL 5144610, *6 (D. Del. Oct. 14, 2014); *Eastman Chem. Co. v. AlphaPet Inc.*, No. Civ. A. 09-971-LPS, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011) (quoting *Hadley v. Shaffer*, No. Civ. A. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003)); *Neurvana Med., LLC v. Balt USA, LLC*, No. CV 2019-0034-KSJM, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019), *reargument denied*, No. CV 2019-0034-KSJM, 2019 WL 5092894 (Del. Ch. Oct. 10, 2019). If a defendant has agreed to a forum selection clause, there is no requirement for the court to undertake a separate due process "minimum contacts" analysis. *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008); *see also Burger King*, 471 U.S. at 472 n.14 (enforcement of "freely negotiated" forum selection clause does not offend due process).

As mentioned earlier, the RSI Agreement states that "venue for any action to enforce or interpret the terms of this Agreement shall be in the county of the State of the party to commence such action." RSI does not challenge the enforceability of that clause. Instead, RSI takes issue with Presidio's interpretation of the clause.

"A court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause."[3] Neither of the parties addressed which state's contract law should apply to interpretation of the forum selection clause, yet both cited to Delaware case law. This is a diversity case, so we look to Delaware's choice of law rules to decide which state's law applies to the provision.[4] "Delaware courts interpret a forum selection clause 'in accordance with the law chosen to govern the contract.'"[5]

The RSI Agreement says that it should be governed by New York law. That means that that the forum selection provision should be interpreted in accordance with New York law. Unfortunately, neither party cited to any New York case law in support of its arguments. That said, I'm unaware of a material difference in how New York courts and Delaware courts would decide the issues in dispute.

Turning to the issues in dispute, RSI first argues that its consent to a particular venue does not amount to a consent to personal jurisdiction. I reject that argument. When a party consents to venue in a particular court, it implicitly consents to the exercise of personal jurisdiction by that court. For example, in *Richardson Greenshields Sec., Inc. v. Metz*, a district court in the Southern District of New York held that an agreement's designation of venue in New York also amounted to a consent to personal jurisdiction in New York.[6]

---

[3] *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180–81 (3d Cir. 2017).

[4] *See Collins*, 874 F.3d at 183 ("In diversity cases such as this one, we look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause.").

[5] *My Size, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 334 (D. Del. 2016) (quoting *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010)).

[6] *See Richardson Greenshields Sec., Inc. v. Metz*, 566 F. Supp. 131, 133 (S.D.N.Y. 1983) ("A waiver of objection to venue would be meaningless . . . if it did not also contemplate a

None of the cases cited by RSI persuade me otherwise. RSI cites *Simon v. Navellier Series Fund* for the proposition that venue and jurisdiction are distinct concepts, a proposition which no one here disputes.[7]  That case didn't consider whether consent to a particular venue contained an implied consent to personal jurisdiction in that venue.  Neither did the case *FS Photo, Inc. v. PictureVision, Inc.*, also cited by RSI, which again simply stands for the proposition that a court must have both jurisdiction and be an appropriate venue.[8]  That case did not even involve a forum selection clause.

RSI's discussion of *In re Pilgrim's Pride Corp. Deriv. Litig.*, does not persuade me otherwise.[9]  *Pilgrim's Pride* acknowledged and followed the "majority rule" that "when parties agree to litigate in a particular forum, they consent implicitly to the existence of personal jurisdiction in that forum."[10]

RSI's second argument is that, even if the forum selection clause amounts to an implied consent to personal jurisdiction, that clause only consents to Washington State and New York State, not Delaware.  Again, that clause states that "venue for any action to

---

concomitant waiver of objection to personal jurisdiction."); *see also CV Holdings, LLC v. Bernard Techs., Inc.*, 788 N.Y.S.2d 445, 446 (N.Y. App. Div. 2005) ("Although defendant now contends that this clause cannot be deemed a consent to personal jurisdiction because it uses the word 'venue' instead of 'jurisdiction,' we agree with plaintiff that to interpret the provision as defendant urges would render it meaningless inasmuch as a court that lacks jurisdiction cannot, at the same time, be the proper venue for an action."); *cf. Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 376–77 (7th Cir. 1990) ("There would be no point to a clause that placed venue in Milwaukee County at Northwestern's option but left the defendants free to object that they were outside the court's jurisdiction."); *ECHO Health, Inc. v. NexPay, Inc.*, No. 1:13-CV-1563, 2013 WL 5952182, at *3 (N.D. Ohio Nov. 6, 2013) ("By consenting to venue in Ohio, Defendant NexPay consented to personal jurisdiction here."); *Nw. Nat. Ins. Co. v. Frumin*, 739 F. Supp. 1307, 1310 (E.D. Wis. 1990) ("[T]he consent to venue would be meaningless unless it encompassed a consent to personal jurisdiction.").

[7] *Simon v. Navellier Series Fund*, No. 17734, 2000 WL 1597890, at *6 (Del. Ch. Oct. 19, 2000).

[8] *FS Photo, Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 444 (D. Del. 1999).

[9] *In re Pilgrim's Pride Corp. Deriv. Litig.*, No. 2018-0058-JTL, 2019 WL 1224556 (Del. Ch. Mar. 15, 2019).

[10] *Id.*, 2019 WL 1224556, at *11 (citing cases).

enforce or interpret the terms of this Agreement shall be in the county of the State of the party to commence such action." (Compl., Ex. C ¶ 14.) Essentially, RSI argues that the "in the county of the State of the party" refers to only the counties of the physical locations of the parties to the contract. RSI then points to the preamble to the agreement, which states that the contract is between "Right! Systems, Inc., a Washington corporation, with offices located [in] Lacey, Washington, and Presidio, Inc., a Delaware corporation with offices located [in] New York, New York." (*Id.*, Ex. C.) According to RSI, that means that the only place where Presidio can sue RSI on the contract is New York County, New York and the only place where RSI can sue Presidio is Thurston County, Washington.

Presidio argues that "in the county of the State" means that an action can be brought in any county in the State that encompasses the county in which the party bringing the action is located.

I'm not thrilled with either interpretation. RSI argues that the clause refers to only physical locations of the parties and, in particular, only the single physical location of each party that is set forth in the preamble. RSI's argument relies on the preamble. But the preamble also explicitly refers to Presidio as being a Delaware corporation. Moreover, the forum selection clause doesn't specify that it is talking about the "physical locations" of the parties. For those and other reasons, RSI's interpretation is not perfect.

But neither is Presidio's. In its briefs, Presidio essentially interpreted the clause to mean "in the State of the county" instead of "in the county of the State." But, as RSI points out, there is no reason to refer to a county if the parties meant any county.

If I resolve the dispute solely on the language of the contract, I side with Presidio. As I stated, RSI's interpretation necessarily relies on the preamble, but the preamble also refers to Presidio as being a Delaware corporation. Accordingly, I would interpret the forum selection clause—which specifies venue "in the county of the State of the party" to bring suit—as a consent to jurisdiction in the state where the filing party is incorporated as well as in the state where its offices are located. That interpretation does not render meaningless the reference to venue in a particular county, which could potentially come into play to specify venue if a suit is brought, for example, in New York, which has county courts and more than one federal district. . . .

10

To the extent that the forum selection clause is ambiguous, I still side with Presidio. When a contract is ambiguous, courts in New York, like courts in Delaware, can look at extrinsic evidence.[11] Here, Presidio submitted extrinsic evidence in the form of a declaration submitted with its answering brief. (*See* D.I. 26.) The declaration is from Waheed Choudhry, a Senior Vice president of West Area Sales at Presidio. Paragraph 11 and Exhibit A of Choudhry's declaration show that the disputed forum selection language was actually added by RSI (*id.* ¶ 11, Ex. A), which could be because RSI wanted to ensure that Presidio could be sued in Thurston County, Washington, where RSI's headquarters are.

RSI did not submit a responsive declaration or any evidence to challenge Presidio's assertion that RSI drafted the disputed language. Nor did RSI submit other evidence demonstrating the intent of the parties with respect to the forum selection clause. The doctrine of *contra proferentem* is a rule of last resort. But under these circumstances, to the extent that the forum selection clause is ambiguous, and absent other evidence bearing on the parties' intent, I conclude that the disputed language should be construed against RSI, the drafter.[12] Accordingly, I conclude that the forum selection clause contains RSI's consent to personal jurisdiction in Delaware.

RSI's third argument is that the forum selection clause does not encompass Presidio's claims. I agree with RSI that the forum selection clause does not cover all of Presidio's claims, but it does cover the breach of contract claim.

A court must have personal jurisdiction over each claim asserted against a defendant.[13] The only asserted basis for jurisdiction over RSI in Delaware is RSI's consent in the forum selection clause of the RSI Agreement. By its terms, that clause only applies to actions "to enforce or interpret the terms of [the RSI] Agreement."

---

[11] *See, e.g., Ames v. Cty. of Monroe*, 80 N.Y.S.3d 774, 776–77 (N.Y. App. Div. 2018); *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[12] *See, e.g., 327 Realty, LLC v. Nextel of New York, Inc.*, 55 N.Y.S.3d 202, 203 (N.Y. App. Div. 2017); *Bonham v. HBW Holdings, Inc.*, No. 820-N, 2005 WL 3589419, at *6 (Del. Ch. Dec. 23, 2005) ("If an ambiguity exists, the court must construe the contract language against the drafter.").

[13] *See McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009); *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1180 (9th Cir. 2004).

RSI argues that the Court lacks personal jurisdiction over it for Presidio's breach of contract claim (Count III) because RSI never received confidential information from Presidio under the RSI Agreement. According to RSI, it thus could not have disclosed or misused such information in breach of the agreement. In other words, RSI argues that the court cannot exercise jurisdiction over it for breach of contract because RSI did not in fact breach the contract. But that is a merits argument.

RSI may be right that it did not breach the contract. But that is a separate question from whether the Court can exercise personal jurisdiction over it to make that determination. Here, the Complaint alleges that RSI received certain information under the RSI Agreement (*e.g.*, Compl. ¶ 51), and that it subsequently breached that agreement by using that information for an unauthorized purpose. That is enough at this stage.

Another interpretation of RSI's argument is that only Presidio can be sued for misuse of confidential information under the [RSI] Agreement, since the point of the agreement was for RSI to share its confidential information with Presidio. But that's not what the language of the agreement says. The agreement states that "each party hereto has provided" information. (Compl., Ex. C.) Moreover, the forum selection clause contemplates that either party to the agreement might later bring a suit under the agreement. (*Id.*, Ex. C ¶ 14.)

It may turn out that Presidio fails to prove breach of the agreement. And, frankly, based on the limited record before me, I have some serious doubts about the merits of Presidio's breach of contract claim against RSI. But what is important at this stage is that the Complaint properly alleges a breach of contract, and an action "to enforce . . . the terms of th[e] Agreement" is explicitly covered under the forum selection clause. Accordingly, I conclude that this Court has personal jurisdiction over RSI with respect to the breach of contract claim, based on the forum selection clause.

The other claims are another matter. Presidio's tortious interference claim (Count IV) and unfair competition claim (Count V) are not within the scope of the forum selection clause. RSI has not consented to personal jurisdiction in Delaware for those claims. Those claims should therefore be dismissed as to RSI.[14] Presidio

---

[14] *See, e.g., Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1136-39 (Del. Ch. 2008) (dismissing claims falling outside forum selection clause for lack of personal jurisdiction).

has not set forth any authority supporting the Court's exercise of pendent personal jurisdiction over RSI for the tortious interference and unfair competition claims, and so I do not analyze that issue.

Accordingly, I recommend that the Court DENY RSI's 12(b)(2) motion to dismiss for lack of personal jurisdiction [with respect to Count III, but GRANT it with respect to Counts IV and V].

**[2.    Davis's motion to dismiss Count II for failure to state a claim]**

Next I'll turn to Semler's and Davis's requests to dismiss claims under Rule 12(b)(6).  I'm not going to read into the record the standard that applies to a motion to dismiss under Rule 12(b)(6). I have a standard that I use in my opinions, for example, in 2020 WL 70981, which I incorporate by reference.[15]

Defendant Davis argues that Count II fails to state a breach of contract claim against her.  Davis first argues that Presidio's breach of contract claim should be dismissed because Davis's non-compete period expired before Presidio filed its Complaint.  I reject that argument.  The fact that certain obligations are no longer ongoing does not preclude Presidio from bringing a suit alleging a prior breach.  Here, Presidio plausibly alleges that Davis breached the non-compete obligations set forth in the Davis Agreement prior to the expiration of the Restricted Period.  According to the Complaint, Davis began working for RSI in April or May 2020. (Compl. ¶ 36.)  The Restricted Period did not end until late June

---

[15] *See Truinject Corp.*, 2020 WL 70981, at *7.  A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal marks omitted).

2020.  The Complaint also alleges that, since her hire, Davis solicited Presidio's customers and suppliers.

Because I conclude that the Complaint states a breach of contract claim against Davis for violation of the restrictive covenant, I don't need to reach the second part of Davis's argument, which is that she did not breach the provision requiring her not to use Presidio's confidential information because that provision also expired at the end of the Restricted Period.  I nevertheless reject that argument.

In the agreement, Davis promises "at all times during the term of employment and thereafter to hold in strictest confidence, and not to use . . . Confidential Information." (Compl., Ex. B § 2(a).) That provision of the agreement makes no reference to the Restricted Period.  Presidio's interpretation of that provision, which is reasonable, is that Davis was privy to certain confidential information that she is obligated to keep confidential even after the Restricted Period expired.

Even if the provision were ambiguous, as Davis argues in the alternative, that would not be grounds to dismiss the claim.  "In deciding a motion to dismiss, the court cannot choose between two differing reasonable interpretations of ambiguous provisions, and dismissal, pursuant to Rule 12(b)(6), is appropriate only if the defendant's interpretation of the terms is the sole reasonable interpretation."[16]

Finally, Davis argues that the breach of contract claim should be dismissed because the Complaint fails to sufficiently identify the Presidio confidential information that Davis disclosed. I disagree.  The Complaint alleges, for example, that Davis and Semler are using Presidio's confidential information "specifically pricing information, margin information, and customer requirements" in connection with their efforts to solicit Presidio's customers. (Compl. ¶ 41; *see also id.* ¶¶ 23, 42-44.) The allegations are sufficient at this stage to move forward with the breach of contract claim against Davis.  Accordingly, I recommend that the Court DENY Davis's motion to dismiss Count II.

---

[16] *AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *7 (D. Del. Jan. 26, 2015).

14

**[3.      Defendants' motion to dismiss Count V for failure to state a claim]**

Defendants argue that the unfair competition claim (Count V) should be dismissed for failure to state a claim.  Count V alleges that Defendants' solicitation of customers, suppliers, and Presidio employees, as well as their misappropriation of trade secrets, constitutes [common-law] unfair competition.  (*Id.* ¶¶ 86-88.)  As I stated earlier, this claim should be dismissed as to RSI for lack of personal jurisdiction.  Accordingly, I will assess this claim only as to Davis and Semler.  I agree with Davis and Semler that the unfair competition claim should be dismissed for failure to state a claim.

Both sides cited only to Delaware case law, which I take as an agreement that I should apply Delaware law to the common-law unfair competition claim.

Presidio's theory of unfair competition is not entirely clear from its Complaint and brief.  To the extent that it relies on a theory of tortious interference with prospective business relations, as was at issue in the *Beard* and *Shure* cases it cited,[17] I conclude that Presidio has failed to plausibly allege a claim under that theory.  Among other things, a claim of tortious interference with prospective business relations requires plausible allegations that the defendant engaged in intentional interference that proximately caused termination of the plaintiff's reasonable expectancy and resulted in damage to the plaintiff.[18]  Although Presidio argues in its brief that Defendants interfered with Presidio's expectation of contracts with its SLED customers, the Complaint does not contain plausible factual allegations suggesting that Defendant's conduct interfered with any particular expectancy or caused damage to Presidio.

To the extent that Presidio's common-law unfair competition claim does not rely on a theory of tortious interference

---

[17] *Shure Inc. v. Clearone, Inc.*, No. 19-1343-RGA-CJB, 2020 WL 2839294, at *9 (D. Del. June 1, 2020); *Beard Research, Inc. v. Kates*, 8 A.3d 573, 607-08 (Del. Ch. 2010).

[18] *See Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003) ("In Delaware, to establish a claim for tortious interference with a prospective contractual relationship, a plaintiff must prove: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted.").

15

with prospective business relations,[19] . . . I agree with Defendants that it is duplicative of Presidio's contract claims. To determine whether an unfair competition claim can survive, the Court must look at whether it is "based entirely on a duty deriving from the contract," or whether "there is a potential violation of a duty imposed by law separate and apart from the contractual obligations."[20]

The Complaint alleges that Davis and Semler improperly solicited Presidio's customers, suppliers, and employees. But Defendants' duty not to do so derives entirely from their contractual agreements with Presidio. Presidio has not pointed to any authority or plausibly alleged facts suggesting that Davis and Semler had a duty not to solicit that was independent of their contractual duties.[21] For the same reason, Presidio cannot base an unfair competition claim on Davis's and Semler's use of information they promised to keep confidential under the Davis and Semler agreements. And none of the cases cited by Presidio stand for the proposition that an unfair competition claim may proceed where the alleged wrongdoing arises from breach of the obligations imposed by a contractual relationship.[22]

Presidio also argues that "Defendants' use of Presidio's confidential information is wrongful conduct not because it is prohibited by a contractual obligation (though there are independent breaches of those obligations), but because Defendants were aware that the information is confidential to Presidio and by using that information to take over Presidio's own customer accounts they are not competing in a fair and lawful manner." But that sounds an

---

[19] I note that the Court of Chancery recently stated that "[t]o the extent that unfair competition exists as an independent common-law tort, it is essentially the same tort [as] tortious interference with prospective business relations." *Preston Hollow Capital LLC v. Nuveen LLC*, No. 2019-0169-SG, 2019 WL 3801471, at *9 n.96 (Del. Ch. Aug. 13, 2019).

[20] *GWO Litig. Tr. v. Sprint Sols., Inc.*, No. N17C-06-356 PRW, 2018 WL 5309477, at *11 (Del. Super. Ct. Oct. 25, 2018).

[21] *See GWO Litig.*, 2018 WL 5309477, at *12 ("[F]ailing to allege a duty independent of those contract duties dooms [Plaintiff's] unfair competition claim and [that claim] must be dismissed.").

[22] *Shure*, 2020 WL 2839294, at *9; *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, No. 15-515-RGA-MPT, 2016 WL 4056205, at *8 (D. Del. July 28, 2016), *report and recommendation adopted,* 2016 WL 4418218 (D. Del. Aug. 17, 2016); *Beard Research*, 8 A.3d at 610.

awful lot like trade secret misappropriation.  And the Delaware Uniform Trade Secrets Act ("DUTSA") preempts unfair competition claims that are grounded in the same facts as a trade secrets claim.[23]   In other words, to the extent that Presidio argues that it has an unfair competition claim based on Defendants' duty not to misappropriate Presidio's confidential information, and that such a duty is not grounded in the Davis and Semler agreements, I reject that argument because such a claim would be preempted by the DUTSA.[24]

Accordingly, I conclude that Count V should be dismissed without prejudice as to Davis and Semler for failure to state a claim.

In sum, I recommend the following:

1.      Defendants' motion to dismiss should be DENIED with respect to Count II (breach of contract against Davis).

2.      Defendants' motion to dismiss should be DENIED with respect to Count III (breach of contract against RSI).

3.      Defendants' motion to dismiss Count IV (tortious interference against RSI) should be GRANTED.  Count IV should be DISMISSED under Rule 12(b)(2) for lack of personal jurisdiction.

4.      Defendants' motion to dismiss Count V (unfair competition against all Defendants) should be GRANTED.  As to RSI, Count V should be DISMISSED under Rule 12(b)(2) for lack of personal jurisdiction.  As to Semler and Davis, Count V should be DISMISSED without prejudice under Rule 12(b)(6) for failure to state a claim.

This Report and Recommendation relies on material set forth in filings that remain under seal.  Accordingly, I am issuing this Report and Recommendation under seal, pending review by

---

[23] 6 Del. C. § 2007(a); *Beard Research*, 8 A.3d at 602.

[24] *See, e.g., GWO Litig.*, 2018 WL 5309477, at *12; *cf. Amkor Tech., Inc. v. Synaptics, Inc.*, No. 15-CV-910, 2016 WL 9307501, at *1 n.1 (D. Del. Oct. 24, 2016).

the parties.  In the event that any party contends that portions of this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version no later than October 1, 2020, for review by the undersigned, along with a motion supported by a declaration that includes a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure."  *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). The Court intends to issue a public version of this Report and Recommendation no later than October 5, 2020.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: September 28, 2020

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge